# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RENEE D. DANIEL, | : | Case No. 3:18-cv-00012 |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Renee D. Daniel has attempted for over 10 years to establish her eligibility for Disability Insurance Benefits and Supplemental Security Income. The Social Security Administration has repeatedly concluded that she is not eligible for these benefits because she is not under a disability. She asserts that she is under a disability due to her physical- and mental-health impairments including, for instance, carpel-tunnel syndrome, back pain, depression, and a breathing disorder.

Plaintiff challenges the most recent denial of her applications by Administrative Law Judge (ALJ) Gregory G. Kenyon. (Doc. #6, *PageID* #s 1318-39). She seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Kenyon's decision.

## II. "Disability" Defined

---
[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as the Social Security Act defines it—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—*i.e.*, "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

**III.  Background**

    **A.**    <u>**Plaintiff And Her Testimony**</u>

Plaintiff asserts that she has been under a disability since December 1, 2008. From this date until age 50 (in March 2017), she was classified as a "younger individual" under social-security law. Upon turning age 50, she became a person "closely approaching advanced age" under social-security law. She has a high-school education and has worked over the years as a food processor, an assembler, and a nurse's assistant.

Plaintiff testified during several administrative hearings the most recent of which occurred in June 2017 before Administrative Law Judge Gregory G. Kenyon. (Doc. #6, *PageID* #s 1357-1390). At the time of the hearing, she was living with her mother and uncle in an apartment. And, she was 5 feet 7 inches tall and weighed 228 pounds.

When asked about her health conditions, Plaintiff explained she suffers from chronic low-back pain that extends down both legs. She rated her back pain as an 8 on a 0 to 10 scale. She estimated having probably over 20 injections in her back over the years. She

also experiences neck pain stemming from a right-shoulder injury. And she has pain in her right arm. She rated her neck pain severity at the level of 7 out of 10, and her shoulder pain severity at 8 out of 10.

Plaintiff also has shortness of breath "all the time." *Id.* at 1371. She used an inhaler on an as-needed basis to alleviate symptoms of pulmonary disease. *Id.* She experienced numbness and tingling in her legs and feet secondary to diabetic neuropathy. *Id.* at 1373. She testified that she "can't stand to wear shoes or have anything touch my feet." *Id.*

Plaintiff explained that she has depression and anxiety. She noted, "I stay down in the dumps … more often now since my daughter passed." *Id.* at 1374. She had difficulty concentrating. And she has crying spells. *Id.* 1375-76. She does not like to be around other people but does not have trouble leaving her home.

Plaintiff estimated that she can lift "five to ten [pounds]" depending on "what it is too." *Id.* at 1376. As to her activities of daily living, she attempts to do light household chores, but she must rest periodically. *Id.* at 1377. She can sit for 1 hour. She lies down periodically during a typical day. When standing, she must sit about every 5 to 10 minutes. She can walk about one-half block. She can take care of personal needs but noted that she gets "so short of breath when … shower[ing]." *Id.* She must "basically sit down and rest after getting out and drying off … because I get overheated. And I'm in pain, my back hurts after I get out the shower too." *Id.* at 1377.

**B.     Medical Opinions**[2]

---

[2] Although the record contains a history of treatment for numerous issues, Plaintiff's arguments on appeal relate only to the opinion evidence of record of specific medical providers. *See* Doc. # 8, *PageID* #2929-35. Accordingly, the instant discussion of the record is limited to those medical providers.

3

## William Houser, M.D.—Medical Expert

Dr. Houser, a pulmonologist, and board certified in internal medicine, testified as the medical expert during Plaintiff's August 8, 2013 administrative hearing (held by ALJ Amelia G. Lombardo). (Doc. #6, *PageID* #s 91-113).

Dr. Houser first discussed the objective findings in the medical record, including an x-ray in 2007 that showed acromioclavicular arthritis; a nerve-conduction study indicated early bilateral carpal tunnel syndrome; additional x-rays in 2007 revealed disc space narrowing (L4-5) with mild degenerative changes; and an additional study documenting discogenic changes with facet arthropathy bilaterally. He also noted that a consultative exam in 2009 commented on low-back pain. And, he observed that Plaintiff's height and weight results in a diagnosis of obesity. *Id.* at 94.

Dr. Houser recognized that Plaintiff's March 2012 pulmonary-function study, showed "a moderate-restrictive-lung defect and a moderate decrease in diffusing capacity with a significant response to bronchodilator." *Id*. at 96. Dr. Houser interpreted the results of this test as consistent with either asthma or chronic obstruction pulmonary disease (COPD). *Id*. at 97. He explained, "although the diagnosis is asthma there is a recent article…, which states that if a person smokes and they have obstruction on pulmonary function testing most physicians, and I would agree with this, would indicate that it is more likely COPD rather than asthma…. So in any event the tests—this could be indicative of COPD." *Id*.

Dr. Houser examined the results of Plaintiff's 2013 lumbar MRI and reported that it indicated no acute fracture, or subluxation, stable, moderate, multilevel degenerative changes,

4

especially at L4-L5 where there is disk space narrowing and facet arthropathy with stable likely associated grade one anterolisthesis …." *Id*. at 98.

Dr. Houser opined that Plaintiff's impairments did not equal or meet any listing. *Id.* at 102. Dr. Houser testified that given her back problem, breathing problem and obesity, Plaintiff was capable of performing a reduced range of light work. She would need to avoid ladders, ropes, scaffolds, and exposure to dangerous machinery. *Id.* at 103. Dr. Houser opined that Plaintiff could occasionally perform postural activity and that she needed to avoid concentrated exposure to respiratory irritants. He added, "That's a little problematic if someone is continuing to smoke because smoking is more hazardous than most, if not all, working environments." *Id*.

Dr. Houser also opined that it would be very surprising if Plaintiff's right-thumb arthritis and related surgery imposed significant long-term restrictions. *Id.* at 104. Dr. Houser testified that "in some cases," conditions such as facet arthropathy, bulging discs and foraminal narrowing could cause pain. *Id.* at 107. Based on his review of the record, he did not find that anybody specifically commented about whether Plaintiff was exaggerating her pain complaints. *Id.* at 108. He continued that pain "is a subjective sensation, so it's difficult for anyone else to, to monitor or measure the relative degree of pain that someone may be having." *Id.* at 108-09.

### **Sue A. Carter, Certified Nurse Practitioner**

Plaintiff obtained medical care at the Rocking Horse Community Health Center, starting in December 2008. *Id.* at 903. Nurse Carter saw Plaintiff in May 2009 and noted

5

that she had received injections from Dr. Nguyen[3] for her back pain. Examination revealed normal lungs, and no musculoskeletal abnormalities. Nurse Carter diagnosed a disc bulge, asthma, and hyperlipidemia. *Id.* at 901.

In June 2009, Nurse Carter opined that Plaintiff could lift/carry up to 10 pounds frequently, stand/walk for about 2 hours during an 8-hour workday, and sit for 1 to 2 hours during an 8-hour workday. Nurse Carter believed that Plaintiff was moderately limited in pushing/pulling, bending, and reaching but not significantly limited in handling or repetitive foot movements. Nurse Carter noted that Plaintiff's health status was "poor but stable," and she indicated that Plaintiff's physical and/or mental functional limitations would last 12 months or more. *Id.* at 899-900. In the end, Nurse Carter concluded that Plaintiff was "unemployable." *Id*. at 900.

In October 2010, Nurse Carter wrote that due to Plaintiff's co-morbidities, she would not be able to function during a full-time, 8-hour workday. *Id*. at 932.

## **Judith Brown, M.D.**

Dr. Brown examined Plaintiff in March 2009. *Id.* at 771-79. Dr. Brown recognized that Plaintiff's medical history included hyperlipidemia and COPD.

Dr. Brown reported that Plaintiff was morbidly obese (5 feet 5.5 inches tall; 244 pounds). She walked "with a somewhat waddling gait that is not antalgic…. She appears stable at station and comfortable in supine and sitting positions…." *Id.* at 772. Her chest examination revealed symmetrical excursion, no accessory muscle recruitment, and no chest wall tenderness. Auscultation of the lung fields revealed no wheezes, rales or rhonchi; the

---

[3] Thaiduc Nguyen, D.O., is a pain-management specialist. (Doc. #6, *PageID* #s 780-82).

expiratory phase was increased. Dr. Brown noted that Plaintiff became moderately dyspneic (out of breath) with the effort associated upon exam in the supine position. *Id.* at 773.

Dr. Brown noted that there was no evidence Plaintiff had acute paravertebral muscle spasm, and percussion of spine revealed tenderness over the L5 and normal deep tendon. Plaintiff's hips were diffusely tender. *Id.* at 774. The exam revealed a decreased range of motion in Plaintiff's lumbar spine. *Id.* at 775. Upon a neurologic exam, Dr. Brown found no muscle weakness, decreased pinprick and light-touch sensation in both feet. Her deep-tendon reflexes were normal. And Plaintiff could walk on her heels and toes. She could also walk heel-to-toe. *Id.* at 774.

Dr. Brown assessed Plaintiff with chronic lower-back pain, chronic foot pain, and COPD. *Id.* at 774. Dr. Brown opined that Plaintiff's ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, and pushing and pulling heavy objects was at least mildly impaired. *Id.* at 775.

### W. Jerry McCloud, M.D. and Teresita Cruz, M.D.

In September 2007, Dr. McCloud reviewed and evaluated Plaintiff's medical records and completed an evaluation of Plaintiff's physical impairments. *Id.* at 677-84. At that time, Plaintiff was 40 years old.

Dr. McCloud opined that Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently. She could stand/walk for 6 hours during an 8-hour workday and sit for 6 hours during an eight-hour workday. *Id.* at 678. Dr. McCloud found that Plaintiff was limited to right-upper-extremity-overhead reaching and lifting. *Id.* at 680. She could frequently engage in handling (bilaterally) and fingering. Dr. McCloud opined that Plaintiff

7

was "not fully credible—subjective complaints are not consistent with objective [medical evidence]." *Id.* at 682.

On April 13, 2008, Dr. Cruz reviewed and evaluated Plaintiff's medical records. *Id.* at 738-45. She found Plaintiff limited to medium work, adding that Plaintiff could never climb ladder, ropes, scaffolds; could frequently stoop; and should avoid all concentrated exposure to fumes, orders, and dust. *Id.* at 739, 740, 742. Dr. Cruz believed that Plaintiff was partially credible. *Id. at* 743.

In October 2009, Maria Congbalay, M.D. reviewed Plaintiff's record and affirmed the earlier evaluations. *Id.* at 823.

### III. **Standard of Review**

Judicial review of ALJ Kenyon's non-disability decision proceeds along two lines: whether he applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*,

486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. <u>The ALJ's Decision</u>

After discussing the extensive procedural history of this case, ALJ Kenyon considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[4] He found (Step 2) that Plaintiff has many severe impairments: lumbosacral degenerative disc disease, cervical spine degenerative disc disease, degenerative joint disease of the right shoulder, cubital tunnel syndrome/carpal tunnel syndrome/reflex sympathetic dystrophy, osteoarthritis of the right thumb, COPD, diabetes mellitus with associated neuropathy, obesity, and depressive disorder. (Doc. #6, *PageID* #1323). The ALJ concluded (Step 3) that Plaintiff was not automatically eligible

---

[4]The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

9

for benefits under the Commissioner's Listing of Impairments, 20 CFR Part 404, Subpar1 P, Appendix 1.

The ALJ's assessed Plaintiff's residual functional capacity (Step 4) or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), and found that she could perform "light work…, subject to the following additional limitations: (1) no more than occasional crouching, crawling, kneeling, stooping, balancing, or climbing of ramps or stairs; (2) no climbing of ladders, ropes, or scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) no more than infrequent or incidental exposure to temperature extremes or respiratory irritants; (5) no more than occasional overhead reaching with the right upper extremity; (6) no more than frequent use of the upper extremities for handling, fingering, or reaching; (7) limited to performing unskilled, simple, repetitive tasks; (8) no more than occasional contact with co-workers, supervisors, or the general public; (9) no fast-paced production work or strict production quotas; (10) limited to jobs which involve very little, if any, change in job duties or work routine from one day to the next." (Doc. #6, *PageID* #1330). These limited abilities led the ALJ to conclude (Step 4) that Plaintiff was unable to perform her past work as a nurse's assistant, an assembler, or a food processor. *Id*. at 1337.

The ALJ determined (Step 5) that Plaintiff could perform a significant number of jobs that exist in the national economy, including packager, mail clerk, and inspector. *Id*. at 1338. These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 1338-39.

**V.     Discussion**

Plaintiff argues that ALJ Kenyon's decision should be reversed because (1) he failed to consider or properly weigh Dr. Houser's testimony; (2) he improperly evaluated the opinion from Ms. Sue Carter, the treating nurse practitioner; and, (3) he failed to adequately explain and support his deference to the opinions of Dr. Brown, a consultative physician.

The Commissioner contends that the ALJ's failure to explicitly weigh Dr. Houser's opinions was harmless error. Plaintiff points out that the ALJ neglected to even mention that Dr. Houser's findings existed and did not even peripherally cite to Dr. Houser's testimony. Plaintiff also contends that there is no way to assess the impact Dr. Houser's findings might have had on the outcome of her claims.

The ALJ's failure to indicate that he considered Dr. Houser's testimony under the applicable legal criteria constituted error. *See* 20 C.F.R. § 404.1527(b); *see also Martin v. Comm'r of Soc. Sec.*, 2:15cv2533, 2016 WL 5402712, *9 (S.D. Ohio Sep. 28, 2016). This error, however, was harmless. If Dr. Houser's testimony is fully credited, the information he provided about the medical record merely verifies that she has numerous physical problems, plus depression. At best for Plaintiff, Dr. Houser testified that her physical conditions such as facet arthropathy, bulging discs, and foraminal narrowing would cause pain. *Id*. at 107. But he offered no insight or opinion about the medical evidence that is probative of how much pain Plaintiff experiences or how limited she is due to her pain or her physical impairments. Dr. Houser's testimony provides only diagnostic information and interpretation of the medical information in the record without suggesting that Plaintiff was under a disability or was more limited in her work abilities than the ALJ found in his assessment of her residual functional capacity. *See* Doc. #6, *PageID* #s 91-101, 104-13.

11

Consequently, the ALJ's error in not mentioning or weighing Dr. Houser's opinion was harmless. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535-36 (6th Cir. 2001) (ALJ's error in not mentioning treating-physician's opinion was harmless); *cf. Wilson*, 378 F.3d at 546 (noting harmless error may occur "if the Commissioner adopts the opinion of a treating source or makes findings consistent with the opinion."); *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. App'x 463, 467-68 (6th Cir. 2004) (failure to mention or weigh opinion of consultative examined constituted harmless error).

Plaintiff correctly observes, "When an ALJ completely ignores evidence from non-treating sources that is inconsistent with the ALJ's residual functional capacity assessment, a remand may be required." (Doc. #8, *PageID* #2930) (citing *Johnson v. Astrue*, 1:09cv2959, 2010 WL 5559542 (N.D. Ohio 2010) *Report & Recommendation* adopted, 2010 WL 5478604 (N.D. Ohio 2010). Yet, neither this observation nor *Johnson* helps Plaintiff show reversible error because the ALJ's assessment in this case of Plaintiff's residual functional capacity was consistent with Dr. Houser's testimony.

Plaintiff next contends that the ALJ's failure to consider Dr. Houser's findings contributed to the improper evaluation of Nurse Carter's opinions. Plaintiff finds that Dr. Houser's opinions supported Nurse Carter's findings and directly refuted the only reasoning the ALJ provided as to why Nurse Carter's opinions deserved little weight.

The ALJ read Nurse Carter's opinions as indicating that Plaintiff could perform at least a limited range of sedentary or light work. (Doc. #6, *PageID* #1332). The ALJ placed little weight on Nurse Carter's opinions because Plaintiff received "only conservative care for her mild-to-moderate degenerative lumbar spine abnormalities and her condition remains

12

relatively stable." *Id*. at 1332-33. Substantial evidence supports this. None of Plaintiff's medical providers suggested surgical intervention. In September 2010, Plaintiff advised Nurse Carter that a bilateral lumbar injection had provided her with 80% relief for over 6 weeks. (Doc. #6, *PageID* #917). Many of Plaintiff's physical-examination results and diagnostic testing contradicted Nurse Carter's opinions, including (1) normal or waddling but non-antalgic gait, with no need for assistive devices, as observed by Drs. Brown, Ranganathan, Galluch, Pap, and a physical therapist; *id*. at 772, 1252, 1324-25, 1405, 1412, 2066, 2068, 2236, 2828); (2) full motor strength or lack of muscle weakness, as observed by Drs. Brown, Ranganathan, Pap, Teegala, and Watson, and an emergency-room physician, *id*. at 774, 847, 872, 1004, 1252, 1325, 1334, 1405, 1412, 1969, 2066, 2068); (3) full musculoskeletal range of motion, as Dr. Teegala observed, *id*. at 1334, 1969); (4) normal lower back range of motion with no tenderness or spasm, as Dr. Pap observed, *id*. at 1405, 1412; (5) normal lung function or lack of respiratory abnormalities, as several physicians and others observed including Drs. Brown, Watson, and Ortiz, as well as Nurse Carter and others at Rocking Horse, *id*. at 872, 891-96, 901, 944, 1325, 2765; (6) normal deep-tendon reflexes, as Dr. Brown observed, *id*. at 774, 1325; (7) full grip/fist strength, as Drs. Brown and Garg observed, *id*. at 773, 1166, 1333; and, (8) no obvious misalignment, edema, or effusion of joints, as Dr. Bashir observed, *id*. at 1334, 2798, 2802, 2806.

In addition, Nurse Carter declined to provide any rationale for her check-mark conclusions, beyond a cursory listing of Plaintiff's diagnoses, and a passing mention of a prior nerve release procedure. *Id*. at 899-900; *see* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that

13

opinion."). "Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a … 'check-off form' of functional limitations that did not cite clinical test results, observations, or other objective findings….") (citations omitted). *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566–67 (6th Cir. 2016).

Plaintiff contends that the ALJ incorrectly weighed Nurse Carter's opinion given the other evidence on record, but her arguments in support of this contention are all unavailing. First, Plaintiff claims that Dr. Houser's opinion supported Nurse Carter's assessment, pointing specifically to Dr. Houser's statements that the treatment Plaintiff received for her back conditions was consistent with her impairments, and that it would be reasonable that Plaintiff's conditions would cause pain "in some cases anyway." *Id*. at 1726-27. These statements, however, do not validate Nurse Carter's opinion to such a degree that the ALJ erred in discounting her opinions. Dr. Houser's statements also fail to undercut the ALJ's assessment of Plaintiff's residual functional capacity. Instead, Dr. Houser's testimony was consistent with the ALJ's assessment of Plaintiff's residual functional capacity, which incorporated every single functional limitation Dr. Houser identified. *See id.* at 1330, 1721-23.

Similarly, Dr. Houser's equivocal statement that Plaintiff's conditions might cause pain "in some cases," does not provide any meaningful support for Nurse Carter's opinions. Even if Dr. Houser had opined that these conditions caused pain in Plaintiff's case—rather than generally stating that they could cause pain "in some cases"—he did not speak to the level of pain they would be expected to cause, much less opine that Plaintiff's pain would

14

cause the level of limitation opined by Nurse Carter. The ALJ also did not discount the Nurse Carter's opinions on the basis that he did not believe Plaintiff experienced any pain but instead the ALJ recognized the existence of Plaintiff's pain, and took it into account when determining her residual functional capacity. *See id*. at 1332-34.

And even if Dr. Houser's statements could be reasonably read to support Nurse Carter's opinions, the mere fact that countervailing evidence exists does not undermine the ALJ's decision, so long as it is supported by substantial evidence. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). The existence of substantial supporting evidence and the ALJ's reliance on it are manifest. Indeed, the ALJ explicitly considered much of the evidence Plaintiff points to, including abnormalities seen in a 2014 back MRI, and her history of receiving epidural injections—but reasonably exercised his discretion in finding that the overall record did not support the extreme limitations espoused by Nurse Carter. *See, e.g.,* Doc. #6, *PageID* #s 1323-24.

Plaintiff contends that Dr. Brown's opinions should not stand as substantial evidence against Nurse Carter's opinions. While Dr. Brown's opinions—that Plaintiff was "at least mildly impaired" in certain work-related activities—do not necessarily preclude the possibility that she has more serious impairments, Dr. Brown's findings—including her findings of a non-antalgic gait, normal deep-tendon reflexes and muscle strength, and that she could stand on one leg at a time without difficulty—supports discounting Nurse Carter's conclusory opinions. *See id*. at 771-79.

Substantial evidence also supports the ALJ's decision to place no weight on Nurse Carter's 2010 opinions. Like her 2009 opinions, Nurse Carter provided no explanation for

15

her opinion that Plaintiff could not work a full-time, 8-hour per day job. *See id.* at 932. Nurse Carter also failed to refer to evidence supporting her conclusions; she merely listed Plaintiff's diagnoses. Additionally, the 2010 Letter contained no functional limitations— only a general statement that Plaintiff would be unable to perform a full-time job, and that this inability would last for a year or longer. *See id.* For these reasons, the ALJ reasonably determined that the 2010 Letter deserved no weight.

Accordingly, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The ALJ's decision on September 21, 2017 be affirmed; and
2. The case be terminated on the Court's docket.

April 10, 2019 *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within FOURTEEN days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within FOURTEEN days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).